**Appeal No. 23-6138**

IN THE
UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

**Nicholas Sellman,
Plaintiff-Appellee,**

**v.**

**Aviation Training Consulting, LLC,
Defendant-Appellant.**

Appeal from the United States District Court
For the Western District of Oklahoma
Case No. CIV-22-365-D
The Honorable Timothy D. DeGiusti

**PLAINTIFF-APPELLANT NICHOLAS SELLMAN'S
OPENING BRIEF AND REQUIRED APPENDIX**

Jason C.N. Smith
Law Offices of Jason Smith
612 Eighth Avenue
Fort Worth, Texas 76104
(817) 334-0880, telephone
(817) 334-0898, facsimile

ATTORNEY FOR APPELLANT
NICHOLAS SELLMAN

December 14, 2023

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... ii

TABLE OF AUTHORITIES ....................................................................iv

PRIOR OR RELATED CASES ................................................................1

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF ISSUES.......................................................................1

STATEMENT OF THE CASE ..................................................................2

   I.   INTRODUCTION.................................................................................2
   II.  PROCEDURAL HISTORY ....................................................................3
   III. FACTUAL HISTORY ..........................................................................4
       A.  Background and Employment with ATC................................4
       B.  Discrimination and Retaliation................................................5
   IV.  DISTRICT COURT'S DECISION ......................................................10
   V.  BASIS FOR APPEAL ......................................................................11

SUMMARY OF ARGUMENT .................................................................13

STANDARD OF REVIEW .....................................................................14

ARGUMENT ........................................................................................14

   I.   THE DISTRICT COURT MISAPPLIED THE 'CAT'S PAW' THEORY IN DISMISSING
   EVIDENCE OF DISCRIMINATORY INFLUENCE ON EMPLOYMENT DECISION..............14
       A.  Summary Judgment Review Framework .................................15
       B.  Burden Shifting Framework .....................................................15
       C.  Legal Analysis: Ample Evidence that discriminatory and retaliatory bias
          influenced ATC's decision influenced the decision not to renew
          Sellman's contract....................................................................17
   II.  THE DISTRICT COURT ERRED IN ITS NARROW INTERPRETATION OF USERRA
   BY EXCLUDING DISCRIMINATION BASED ON SERVICE-RELATED DISABILITIES.....25
       A.  Legal Framework ...................................................................26
       B.  Legal Argument......................................................................26

CONCLUSION .....................................................................................28

STATEMENT REGARDING ORAL ARGUMENT ...........................................31

CERTIFICATE OF COMPLIANCE ..................................................................32

CERTIFICATE OF SERVICE...........................................................................33

APPENDIX ...........................................................................................................34

1.  Order granting Defendant Aviation Training Consulting, LLC's motion for Summary Judgmetn and Brief in Support (September 14, 2023)(ECF Doc. 100)

2. Judgment (entered September 14, 2023) (ECF Doc. 100)

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 243 (1986)............................................................15

*Crowe v. ADT Sec. Servs., Inc.*,
649 F.3d 1189 (10th Cir.2011) ..........................................16

*Duarte v. Agilent Techs., Inc.*,
366 F.Supp.2d 1039 (D.Colo.2005)....................................26

*E.E.O.C. v. BCI Coca–Cola Bottling Co.*,
450 F.3d 476 (10th Cir. 2006) ....................16, 17, 18, 19, 25

*Evans v. City of Houston*,
246 F.3d 344 (5th Cir. 2001) ..............................................23

*Ferrell v. Ezpawn Oklahoma, Inc.*,
No. Civ-18-607-SLP 2019 WL 3207797 (W.D. Okla. July 16, 2019)....14, 27, 28

*Garrett v. Hewlett-Packard Co.*,
305 F.3d 1210 (10th Cir. 2002) ..........................................23

*Gonzales v. Columbia Hosp.*,
2002 WL 31245379 (N.D. Tex. 2002)..................................17

*Hill v. Michelin N. Am., Inc.*,
252 F.3d 307 (4th Cir.2001) ...............................................26

*Jackson v. Service Engineering, Inc.*,
96 F. Supp. 2d 873 (S.D. Ind. 2000) ...................................17

*Lawson v. CSX Transp., Inc.*,
245 F.3d 916 (7th Cir. 2001) ..............................................17

*Lester v. M&M Knopf Auto Parts*,
2006 WL 2806465 (W.D.N.Y. 2006) ...................................17

*Llampallas v. Mini–Circuits, Lab, Inc.*,
163 F.3d 1236 (11th Cir.1998) ...........................................18

*Lukacinsky v. Panasonic Service Co.*,
2004 WL 2915347 (D. Mass. 2004) .....................................17

*Mastsuhia Elec. Indus., Inc. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)......................................................23, 24

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).........15

*Metz v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*,
39 F.3d 1482 (10th Cir. 1994) ............................................21

*Moore v. Wal-Mart Stores East, L.P.*,
2009 WL 3109823 (M.D. Ga. 2009).....................................17

*Patterson v. McLean Credit Union*,
  491 U.S. 164 (1989) ............................................................................24
*Quick v. Frontier Airlines, Inc.*,
  544 F. Supp. 2d 1197 (D. Colo. 2008) ................................................26
*Reeves v. Sanderson Plumbing Prods., Inc.*,
  530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) ....................19
*Russell v. McKinney Hosp. Venture*,
  235 F.3d 219 (5th Cir.2000) ..........................................................19, 21
*Sandoval v. Unum Life Ins. Co. of Am.*,
  952 F.3d 1233 (10th Cir. 2020) ...........................................................14
*Shackelford v. Deloite & Touche*,
  190 F.3d 398 (5th Cir. 1999) ...............................................................23
*Shager v. Upjohn Co.*,
  913 F.2d 398 (7th Cir.1990) ...........................................................18, 24
*Simmons v. Sykes Enters., Inc.*,
  647 F.3d 943 (10th Cir.2011) ..................................................17, 18, 25
*Sprint/United Mgmt. Co. v. Mendelsohn*,
  552 U.S. 379 (2008)..............................................................................20
*Staub v. Proctor Hospital*,
  562 U.S. 411 (2011).......................................................2, 14, 18, 31
*Swackhammer v. Sprint/United Mgmt. Co.*,
  493 F.3d 1160 (10th Cir. 2007) ............................................................24
*Tomsic v. State Farm Mutual Auto. Ins. Co.*,
  85 F.3d 1472 (10th Cir. 1996) ..............................................................20
*Twigg v. Hawker Beechcraft Corp.*,
  659 F.3d 987 (10th Cir.2011) ...............................................................15
*U.S. E.E.O.C. v. E.I. Du Pont de Nemours & Co.*,
  406 F. Supp. 2d 645 (E.D. La. 2005), *aff'd in part, rev'd in part on other
  grounds*, 480 F.3d 724 (5th Cir. 2007) ................................................17
*U.S. v. Diebold, Inc.*,
  369 U.S. 654 (1962)..............................................................................24
*Ward v. Jewell*,
  772 F.3d 1199 (10th Cir. 2014) ............................................................15
*Williams v. U.S. Services, Inc.*,
  2012 WL 590049 (D.S.C. 2012).......................................................17
*Wolfgram v. G4S Secure Sols. (USA), Inc.*,
  2018 WL 5016337 (N.D. Ind. Oct. 15, 2018)................................27, 28

**STATUTES**

28 U.S.C. § 1291 ....................................................................................1
29 C.F.R. § 1630.2(j)(3)(iii) ..................................................................18
38 U.S.C. § 4301 et seq. .........................................................................27
38 U.S.C. § 4311(a) ................................................................................26
38 U.S.C. § 4311(b) ................................................................................26
42 U.S.C. § 12102 ..................................................................................17

**RULES**

10th Cir. R. 28.2(C)(2) ...........................................................................31
Fed. R. App. P. 4 ......................................................................................1
Fed. R. App. P. 32(a)(5) .........................................................................32
Fed. R. App. P. 32(a)(6) .........................................................................32
Fed. R. App. P. 32(a)(7)(B) ....................................................................32
Fed. R. App. P. 32(f) ..............................................................................32

**OTHER AUTHORITIES**

Fables of La Fontaine 344 (Walter Thornbury trans., Chartwell Books 1984).......18
Webster's Third New International Dictionary Unabridged 354 (2002) ...............18

## PRIOR OR RELATED CASES

There are no prior or related cases.

## JURISDICTIONAL STATEMENT

This appeal is before the United States Court of Appeals for the Tenth Circuit following the final judgment entered by the United States District Court for the Western District of Oklahoma in case number 5:22-cv-00365-D. (App. 1).[1] This Court has jurisdiction over this appeal under 28 U.S.C. § 1291 as it arises from a final decision of a district court. The plaintiff-appellant Nicholas Sellman timely filed a notice of appeal on September 15, 2023, following the District Court's judgment on September 14, 2023, thus satisfying the requirements set forth in Rule 4 of the Federal Rules of Appellate Procedure. (App. at 12).

## STATEMENT OF ISSUES

1. Whether the District Court erred in its application of the 'cat's paw' theory by inadequately considering evidence of discriminatory and retaliatory motives, including the influence of a non-decision-maker's discriminatory animus, in the decision to not renew Plaintiff-Appellant Nicholas Sellman's employment contract by Defendant-Appellee Aviation Training Consulting LLC, and

---

[1] "App." refers to Appellant's required Appendix.

whether this constitutes a misapplication of legal standards contrary to established precedents.

2. Whether the District Court erred in narrowly interpreting the Uniformed Services Employment and Reemployment Rights Act by excluding discrimination based on service-related disabilities, thereby undermining the comprehensive protections intended by the Act for service members in their civilian employment.

## STATEMENT OF THE CASE

### I.    Introduction

This appeal arises from the United States District Court for Western District of Oklahoma where the Plaintiff-Appellant Nicholas Sellman ("Sellman", "Plaintiff" or "Appellant") seeks reversal of the District Court's order granting summary judgment in favor of Defendant-Appellee Aviation Training Consulting LLC ("ATC"). This case presents significant legal questions pertaining to the interpretation and application of anti-discrimination laws under the Americans with Disabilities Act ("ADA"), specifically in the context of employment discrimination and the 'cat's paw' principle established in *Staub v. Proctor Hospital*. Moreover, the appeal also challenges the District Court's overly narrow interpretation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"),

particularly its failure to recognize discrimination based on service-related disabilities, thereby potentially limiting the scope of protection intended for veterans and active service members under the Act.

The plaintiff, a disabled veteran, alleges that his non-renewal of contract with ATC was substantially influenced by discriminatory animus towards his disability, being regarded as disabled, and his complaint of disability discrimination, a claim that the District Court failed to acknowledge adequately. (App. At 207). The focal point of this appeal is the District Court's failure to recognize the significant influence of discriminatory bias by Sellman's supervisor, Rick Sofge, in the decision-making process regarding Sellman's employment. Sofge's discriminatory animus was a proximate cause of the non-renewal of his contract. Under the 'cat's paw' theory, it is sufficient if such bias constitutes a contributing factor to the employment decision, even if it is not the sole or primary reason. This oversight, executed through the District Court's failure to acknowledge critical pieces of evidence disputing Defendant's assertions, represents a critical error in law.

## II.    Procedural History

Nicholas Sellman filed his lawsuit against Aviation Training Consulting LLC on September 16, 2021, in the Northern District of Texas. (App. at 11). Subsequently, the case was transferred to the Western District of Oklahoma on May 3, 2022. (App.

at 9-11). Sellman filed an amended complaint (App. at 204), to which ATC responded with an answer on May 31, 2022 (App. at 194).

ATC filed a Motion for Summary Judgment on July 15, 2022. (App. at 5). Following discovery and extensive briefing, on September 14, 2023, the District Court issued its order granting ATC's Motion for Summary Judgment. (App. at 14). The Court concluded that Sellman failed to demonstrate a genuine issue of material fact regarding his ADA and USERRA claims, thereby ruling in favor of ATC and dismissing Sellman's claims. Sellman filed a Notice of Appeal on September 15, 2023, challenging the summary judgment order and seeking appellate review. (App. at 12).

### III.   Factual History

### A.    Background and Employment with ATC

Nicholas Sellman was employed by Aviation Training Consulting LLC as a loadmaster on a C-130 aircraft from April 2017 through April 2018. (App. at 14). His role at ATC was integral to the operations, entailing significant responsibilities in the coordination and management of cargo on the aircraft. (App. at 151-158). This position required a high level of skill, diligence, and attention to safety, making Sellman's role crucial to the successful execution of ATC's operations. (App. at 151-158).

A former Marine who was deployed to Iraq and Afghanistan, Sellman is also a disabled veteran – a fact within the knowledge of ATC upon his hiring. (App. at 76-91).  However, Sofge was unaware of Sellman's disability status with the VA when ATC hired Sellman. (App. at 145).

Sellman's disabilities include PTSD as well as blood pressure issues, neuropathy in his hands and feet, and cervical and head pain. (App. at 103-04, 121). Sellman's PTSD developed from flying as crew on "angel flights" carrying dead bodies of fellow service personnel from Iraq. (App. at 107-08).

A turning point in Sellman's employment at ATC occurred with the approval of his 100% VA Disability Rating by the Veterans Administration. (App. at 79, 109-12). This development, rather than being recognized as a testament to his sacrifice and service, became a point of contention for his superior at ATC.

### B.    Discrimination and Retaliation

As the District Court acknowledges in its statement of the facts:

> After Plaintiff received his 100% VA Disability Rating, he told co-worker Jean Colley and Director of Operations Richard Sofge. It is undisputed that Sofge then made inappropriate comments to Plaintiff regarding his VA disability rating. Although there is some dispute as to Sofge's precise comments, Sofge referred to individuals who "game the system" and how the VA disability system is broken. Plaintiff alleges that Sofge sarcastically called him a "cripple" and a "criminal" for collecting disability benefits, implying that Plaintiff was not actually disabled.

(App. at 16).

Sofge became upset when he discovered that Sellman received a 100% VA Disability Rating and "laid into him." (App. at 109-12). However, trying to distance himself from any illegality, Sofge claims he does not recall saying it was criminal for Sellman to be collecting disability benefits or that he was abusing the system. (App. at 148, 160).

Graham Mueller, who held the position of Chief Pilot for ATC in Kuwait, emphasized the importance of having a competent loadmaster on the C-130 aircraft. (App. at 34-36). He stated that a skilled loadmaster was vital to ensure the plane's proper loading, a crucial factor in maintaining the aircraft's flight stability and safety (App. at 39-40). He detailed ATC's policy, which mandated an annual NATOPS evaluation for every crew member, including loadmasters. (App. at 41-42). This rigorous assessment comprised a written test, open and closed book examinations, an oral examination, and a practical flight examination, also known as a check ride (App. at 43). Sellman, an ATC employee, had successfully passed his NATOPS exam, as evidenced by his authorization to fly in Kuwait, and Mueller personally observed Sellman's adherence to safety protocols onboard the aircraft. (App. at 42-44). Despite this, Mueller described Sellman simply as a "nice enough guy" (App. at 57).

At ATC, Mueller worked in a building with other offices, often with his door open and headphones on, creating a semi-private yet accessible workspace (App. at

36-37). This office arrangement played a role in Mueller witnessing a significant incident: the aforementioned verbal altercation between Rick Sofge, another ATC employee, and Sellman. (App. at 38; 132). The conflict centered around Sellman receiving a 100% VA Disability Rating from the Veterans Administration. Sofge loudly questioned the legitimacy of Sellman's disability, and the argument escalated to a point where Sofge stormed out. (App. at 123-124; 132). This confrontation took place close to Mueller's office, and he overheard Sofge's sarcastic remarks and loud discussion about Sellman's disability and VA disability rating, which lasted for approximately 20-30 minutes (App. at 123-124; 38).

Following this incident, the dynamics within the office shifted notably. Mueller's behavior towards Sellman changed; he became terser and stopped engaging in the friendly banter that had characterized their relationship before the altercation (App. at 132). Similarly, Sofge's interaction with Sellman deteriorated post-incident. (App. at 131-132). Before the disagreement, Sofge and Sellman had maintained a positive working relationship, often socializing and exchanging pleasantries. (*Id.*). However, after the incident, Sofge stopped talking to or even acknowledging Sellman (App. at 131-132).

This incident's fallout extended to JD Dunivant, another pilot and Mueller's close associate in Kuwait. Dunivant questioned Sellman about what had transpired to provoke Sofge's intense reaction (App. at 124).

On November 17, 2017, Sellman complained to ATC regarding Sofge's treatment of him because of his disability. (App. at 16, 127-29, 186, 196). Around December 14, 2017, after a delay in looking into the complaint, Vice President of Internal Operations Dennis Stephens counseled Sofge that his comments were inappropriate and would not be tolerated. (App. at 16, 73, 128-29, 186).

Professionally, Mueller conducted a midyear performance review of Sellman on January 9, 2018, which Sellman duly signed. (App. at 45-46). This review process was a standard practice at ATC, where employees were expected to go through their reviews and sign them (App. at 47). However, controversy surrounds a later performance evaluation dated January 31, 2018. Mueller claimed to have prepared and discussed this review with Sellman, who allegedly became upset and left the room without signing it. (App. at 47-48, 98-99). Rick Sofge is identified as "Senior Rater" but his signature does not appear on the January 31st Review. (App. at 48). Contradicting Mueller's account, Sellman insisted that he neither saw nor discussed this January 31st review while employed at ATC. (App. at 68-69). His signature was absent from this document (App. at 98-99).

In this disputed review, Sellman was rated 'satisfactory' in teamwork, technical competence, and client focus, but 'marginal' in dependability and initiative. (App. at 98-99). The 'marginal' rating was defined as achieving acceptable performance in most tasks and generally meeting standards (App. at 98-99). Sellman

contested these ratings, asserting that his performance was not only satisfactory but excellent in some categories, including competence, client focus, and communication (App. at 134-137).

Regarding his departure from ATC, Mueller denied any involvement in the decision-making process about renewing Sellman's contract (App. at 53-54, 64). In his current role as the Marine for Life representative in Seattle, Washington, Mueller aids Marines transitioning out of service, including those with disabilities such as PTSD. (App. at 55-56). He acknowledged the stigma surrounding PTSD and the apprehensions Marines have about disclosing their condition and 100% VA Disability Rating, especially when it comes to obtaining FAA certification for flying (App. at 61-63).

Around February 27, 2018, less than 11 weeks after being reprimanded for his tirade against Sellman's disability status, Sofge recommended that Sellman's contract not be renewed. (App. at 76, 93,148, 185).

ATC claims the non-renewal decision was made by Vice President of Operations Michael Young and Vice President of Internal Operations Dennis Stephens made the decision not to renew Sellman's contract. (App. 18).  Of course, Stephens, who counseled Sofge, was aware of Sellman's complaint. (App. 16).

When Sellman discussed his contract non-renewal with Sofge, Sofge told Sellman "that was the first he had heard about it and the decision had come from

headquarters." (App. at 140). However, it was Sofge who first recommended that Sellman's contract not be renewed. (App. at 93, 140, 185).

## IV.    District Court's Decision

The United States District Court for the Western District of Oklahoma granted summary judgment in favor of Aviation Training Consulting LLC, concluding that Nicholas Sellman, the Plaintiff-Appellant, did not present sufficient evidence to demonstrate a genuine issue of material fact for his claims under the ADA and USERRA. (App. at 14-31).

The Court concluded that ATC had provided a legitimate, non-discriminatory reason for its employment decision, citing Sellman's "marginal" performance as outlined in the disputed performance review. Concurrently, however, the District Court acknowledged that:

> After Plaintiff received his 100% VA disability rating, he told co-worker Jean Colley and Director of Operations Richard Sofge. It is undisputed that Sofge then made inappropriate comments to Plaintiff regarding his VA disability rating. Although there is some dispute as to Sofge's precise comments, Sofge referred to individuals who "game the system" and how the VA disability system is broken. Plaintiff alleges that Sofge sarcastically called him a "cripple" and a "criminal" for collecting disability benefits, implying that Plaintiff was not actually disabled.

(App. at 16). The Court would further note that "[o]n February 27, Sofge gave his recommendation that Plaintiff's contract not be renewed." (App. at 17).

The District Court held that the Sellman's argument of subordinate bias was not substantiated by the evidence provided. It noted that the decision-makers, Stephens and Young, with final approval from Cox, based their decision not on Sofge's recommendation alone but on a combination of factors, including Mueller's performance review and Sellman's failure to maintain an FAA flight certificate. The Court further noted that Mueller was not aware of Sellman's HR complaint or PTSD diagnosis at the time of the performance review. This assertion, however, was disputed.

For the USERRA claim, the Court ruled that Sellman failed to establish a genuine issue of material fact regarding whether his prior military service was a motivating factor in ATC's decision not to renew his contract. (App. at 20-21). The Court found that Sellman's USERRA claim was based not on his military service but on his disability status, specifically his 100% VA disability rating. (App. at 20). The Court then interpreted USERRA's protections to not extend to disability status. (App. at 20-21).

## V.    Basis for Appeal

The Plaintiff-Appellant, Nicholas Sellman asserts that the District Court erred in  granting summary judgment in favor of Aviation Training Consulting LLC (ATC) for the following reasons.

First, this appeal contends that the District Court did not properly apply the 'cat's paw' theory to ATC's non-renewal of Sellman's contract after the recommendation of Sofge. The 'cat's paw' theory suggests that an employer can be held liable for discrimination based on the influence of an employee who, while not making the ultimate decision, affected the outcome through discriminatory intent. The Court failed to give weight to the influence of Sofge's discriminatory and retaliatory animus in the decision-making process leading to the non-renewal of Sellman's contract.

The second basis for appeal is the District Court's narrow interpretation of the Uniformed Services Employment and Reemployment Rights Act in dismissing discrimination claims based on service-related disabilities. The appeal argues that the Court erred by not recognizing discrimination stemming from a Veteran's Administration disability rating in light of Sofge's hostility to VA disability claims as within USERRA's protective scope, thus undermining the Act's intent to safeguard the employment rights of service members. This aspect of the appeal challenges the District Court's failure to recognize the broad effect of USERRA, which is necessary to ensure comprehensive protection against employment discrimination for veterans and service members.

These two central issues form the foundation of the Plaintiff-Appellant's argument that the District Court's summary judgment was not in accordance with

the legal standards established for discrimination claims under USERRA and the principles governing the 'cat's paw' theory.

## SUMMARY OF ARGUMENT

The primary issue on appeal concerns the District Court's misapplication of the 'cat's paw' theory, a well-established legal principle that holds an employer accountable for employment discrimination influenced by an employee who, while not making the ultimate decision, injected it with discriminatory bias. Nicholas Sellman asserts that the District Court erred in its interpretation and application of this principle, overlooking the potential influence of Rick Sofge's discriminatory animus on ATC's decision not to renew Sellman's contract. In coming to its conclusion, the Court accepted disputed facts as true, such as the legitimacy of a performance review on which ATC justified the termination, as well as Mueller's purported lack of knowledge about Sellman's disability, VA rating and the confrontation with Sofge.

The second issue in this appeal is the District Court's narrow interpretation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), specifically its exclusion of discrimination based on service-related disabilities from USERRA's protective scope. The Plaintiff-Appellant, Nicholas Sellman, contends that this interpretation significantly undermines the Act's intent to safeguard the civilian employment rights of service members. The District Court's reliance on

*Ferrell v. Ezpawn Oklahoma, Inc.*, and similar cases, led to a constrained understanding of USERRA, overlooking the intrinsic link between military service and resulting disabilities. This limited view, Plaintiff-Appellant argues, fails to recognize the full extent of employment discrimination protections that USERRA is designed to provide, necessitating a broader judicial interpretation in line with the Act's comprehensive protective objectives.

## STANDARD OF REVIEW

This Court reviews the District Court's grant of summary judgment de novo, applying the same standard that applied in the district Court. *Sandoval v. Unum Life Ins. Co. of Am.*, 952 F.3d 1233, 1236 (10th Cir. 2020).

## ARGUMENT

I.  **The District Court Misapplied the 'Cat's Paw' Theory in Dismissing Evidence of Discriminatory Influence on Employment Decision.**

In evaluating the wrongful non-renewal of Nicholas Sellman's employment contract, the District Court significantly misapplied the 'Cat's Paw' theory, failing to recognize the pivotal role of discriminatory influence in the decision-making process. This theory, as delineated in seminal cases like *Staub v. Proctor Hospital*, emphasizes the liability arising from a biased subordinate's influence on a decision-maker. However, the District Court overlooked critical evidence of Rick Sofge's discriminatory animus towards Mr. Sellman's disability and VA Disability Rating,

14

the influence this animus had on Sellman's supervisor, and its effect in contaminating the neutrality of the employment decision.

## A. Summary Judgment Review Framework

The Court must view facts and inferences in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 243, 255 (1986). Credibility determinations are not part of the summary judgment analysis. *Anderson*, 477 U.S. at 247-49. Even if the Court believes the summary judgment standards have been met, a court has the discretion to deny a motion for summary judgment if it believes the better course would be to proceed with a full trial." *Anderson*, 477 U.S. at 255.

## B.    Burden Shifting Framework

A plaintiff can state a valid claim under Title VII or § 1981 by presenting either direct or circumstantial evidence of disability discrimination or retaliation.[2] *Ward v. Jewell*, 772 F.3d 1199, 1202 (10th Cir. 2014). When a plaintiff presents only circumstantial evidence, the *McDonnell Douglas* [3] burden-shifting framework typically applies. *Id.* Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation by demonstrating that (1) he or she

---

[2] Because "the showing required to establish retaliation is identical under § 1981 and Title VII," s*ee Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir.2011) (internal quotation marks omitted), it is unnecessary to distinguish between these bases for recovery here.

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

engaged in a protected activity, (2) he or she suffered a material adverse action, and (3) there was a causal connection between the protected activity and the adverse action. *See Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1195 (10th Cir.2011). The burden then shifts to the employer to articulate a legitimate non-retaliatory reason for taking the adverse employment action before ultimately shifting back to the plaintiff to establish that the employer's explanation is pretextual—i.e., unworthy of belief. *See id.* at 1196.

Where a plaintiff lacks evidence that the actual decisionmaker possessed an unlawful retaliatory animus, the plaintiff can establish pretext by invoking the cat's-paw theory of recovery and presenting evidence that a biased subordinate who lacked decision making power used the formal decisionmaker as a dupe in a deliberate scheme to bring about an adverse employment action. *See E.E.O.C. v. BCI Coca–Cola Bottling Co.*, 450 F.3d 476, 484–85 (10th Cir. 2006). Under a cat's-paw theory of recovery (also known as "subordinate bias" or "rubber stamp" theory), an employer who acts without discriminatory intent can be liable for a subordinate's discriminatory animus if the employer uncritically relies on the biased subordinate's reports and recommendations in deciding to take adverse employment action. See *id.*

To survive summary judgment when a retaliation claim is based on the cat's-paw theory, the plaintiff must establish that there is a genuine issue of material fact as to (1) the discriminatory or retaliatory animus of the subordinate, and (2) whether

the subordinate's animus translated into discriminatory or retaliatory actions that caused the decisionmaker to take adverse employment action. *See id.* at 488; *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 950 (10th Cir.2011).

### C. Legal Analysis: Ample Evidence that discriminatory and retaliatory bias influenced ATC's decision influenced the decision not to renew Sellman's contract.

Sellman brought claims for disability discrimination based upon his PTSD and physical conditions, being regarded as disabled and having a record of disability, based upon the 100% VA Disability rating, and retaliation for complaining about Sofge's hostility towards his disability his record of disability.[4] (App. at 207). The term "disability" means, with respect to an individual— (A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment. 42 U.S.C. § 12102.

The VA determined Sellman was disabled because he suffered from PTSD, degenerative disc disease, and sleep disorder and gave him a 100% VA Disability

---

[4] Sellman's  100% VA Disability Rating is evidence supporting the conclusion he was disabled or that he was regarded as disabled. *Lawson v. CSX Transp., Inc.*, 245 F.3d 916, 927 (7th Cir. 2001); *Williams v. U.S. Services, Inc.*, 2012 WL 590049, at *7 (D.S.C. 2012) (17% disability rating under workers' compensation); *Moore v. Wal-Mart Stores East, L.P.*, 2009 WL 3109823, at *8 (M.D. Ga. 2009); *Lester v. M&M Knopf Auto Parts*, 2006 WL 2806465 (W.D.N.Y. 2006); *Gonzales v. Columbia Hosp.*, 2002 WL 31245379 (N.D. Tex. 2002); *Jackson v. Service Engineering, Inc.*, 96 F. Supp. 2d 873, 881 (S.D. Ind. 2000). See also *U.S. E.E.O.C. v. E.I. Du Pont de Nemours & Co.*, 406 F. Supp. 2d 645, 654 (E.D. La. 2005), aff'd in part, rev'd in part on other grounds, 480 F.3d 724 (5th Cir. 2007) ("Although evidence that DuPont encouraged Barrios to retire on disability and ultimately discharged her on disability is not dispositive of whether she was actually disabled, the jury again could have found it probative of her physical condition."); *Lukacinsky v. Panasonic Service Co.*, 2004 WL 2915347 (D. Mass. 2004).

Rating. (App. 16, 81). While some attempt to deny the seriousness of PTSD suffered by veterans like Sellman, the EEOC has acknowledged their disabling nature. 29 C.F.R. § 1630.2(j)(3)(iii).

The District Court's application of the 'Cat's Paw' theory, primarily recognized in *Staub v. Proctor Hospital*, 562 U.S. 411 (2011), deviated from its authoritative application as the Court failed to fully consider the impact of a non-decision-maker's discriminatory animus in the employment decision.

The District Court's grant of summary judgment in favor of ATC should be reversed because there exists a genuine dispute of material facts concerning the discriminatory retaliatory animus of Rick Sofge, and the influence of this animus on the adverse employment actions taken against Sellman.

Under the 'Cat's Paw' theory[5], as elucidated in *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476 (10th Cir. 2006) and *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943 (10th Cir. 2011), the evidence in the record raises a

---

[5] "The "cat's paw" doctrine derives its name from a fable, made famous by La Fontaine, in which a monkey convinces an unwitting cat to pull chestnuts from a hot fire. *See* Fables of La Fontaine 344 (Walter Thornbury trans., Chartwell Books 1984). As the cat scoops the chestnuts from the fire one by one, burning his paw in the process, the monkey eagerly gobbles them up, leaving none left for the cat. *Id.* Today the term "cat's-paw" refers to "one used by another to accomplish his purposes." Webster's Third New International Dictionary Unabridged 354 (2002). In the employment discrimination context, "cat's paw" refers to a situation in which a biased subordinate, who lacks decisionmaking power, uses the formal decisionmaker as a dupe in a deliberate scheme to trigger a discriminatory employment action." Id. citing *Llampallas v. Mini–Circuits, Lab, Inc.,* 163 F.3d 1236, 1249 (11th Cir.1998). See also *Shager v. Upjohn Co.,* 913 F.2d 398, 405 (7th Cir.1990) (Posner, J.) (inaugurating the descriptor "cat's-paw" for this category of claim).

genuine issue of material fact as to (1) the discriminatory and retaliatory animus of Sofge, and (2) the influence of this animus on the decision-making process at ATC.

"Holding employers accountable for the actions of biased subordinates also advances the purposes of Title VII. It should go without saying that a company's organizational chart does not always accurately reflect its decisionmaking process." *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles, 450 F.3d 476, 486 (10th Cir. 2006) citing Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151–52, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (finding that the bias of a supervisor, the husband of the formal decisionmaker, could be imputed to the company because the supervisor "was the actual decisionmaker" and was "principally responsible for petitioner's firing"); *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 227 (5th Cir.2000) (noting that "courts will not blindly accept the titular decisionmaker as the true decisionmaker").

Vice President of Internal Operations Dennis Stephens was one of the two ATC officials who made the decision, according to ATC, to not renew Sellman's contract. Stephens, who had counseled Sofge for his comments to Sellman after Sellman complained, was obviously aware of Sellman's discrimination complaint when he made this decision.

There is also ample evidence that Sofge exerted influence or leverage over the employment decision at issue. Sofge was the first official at ATC to recommend the

non-renewal of Sellman's contract based upon a suspicious performance review that was unsigned by Sellman. Curiously, Sofge denied his involvement in the non-renewal decision to Sellman. (App. at 140).

The record presents substantial evidence indicating the retaliatory and discriminatory animus of Sofge towards Sellman's disability and VA Disability Rating. Rick Sofge was a supervisor of Sellman and it is undisputed that after Sellman disclosed his 100% VA Disability Rating to Sofge, Sofge made derogatory remarks about individuals who exploit the VA disability system and sarcastically labeled Sellman as a "cripple" and a "criminal," insinuating that Sellman was unjustifiably claiming disability benefits. (App. at 15-16). It is also undisputed that Sellman complained to ATC, which counseled Sofge for his comments about Sellman's disability merely just over 10 weeks before Sofge recommended that Sellman's contract not be renewed based upon a suspect performance review that Sellman did not sign. (App. at 16).

The crux of the argument lies in the failure of the District Court to appropriately weigh the evidence of bias and its potential to influence ATC's decision. The Tenth Circuit recognizes that "remarks exhibiting bias which refer directly to the plaintiff" can demonstrate pretext. *Tomsic v. State Farm Mutual Auto. Ins. Co.*, 85 F.3d 1472, 1479 (10th Cir. 1996). See also *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008) ("The question whether evidence of

discrimination by other supervisors is relevant in an individual [discrimination] case is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case."); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 227 (5th Cir. 2000) ("Consequently, it is appropriate to tag the employer with an employee's age-based animus if the evidence indicates that the worker possessed leverage, or exerted influence, over the titular decisionmaker.).

In this case, Sofge's derogatory comments towards Sellman, sarcastically referring to him as a "cripple" for obtaining a 100% VA Disability Rating, directly exhibit such bias. (App. at 15-16). These remarks are crucial in assessing the discriminatory influence on the employment decision.

Further, the District Court overlooked the significance of ATC's deviation from normal procedures in conducting Sellman's performance review, a key indicator of pretext as outlined in *Metz v. Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 39 F.3d 1482, 1492 n. 12 (10th Cir. 1994). The fact that Sellman did not sign or even see the January 31st review, contrary to ATC's normal practice, raises serious questions about the authenticity of the performance issues cited as the reason for not renewing his contract.

Indeed, Sellman's fellow loadmaster Jean Colley who worked with Sellman and gave him his check ride testified that Sellman was more than capable of doing

his job. (App. at 30), in direct contravention to the picture painted by the suspicious January 31st review.

Following Rick Sofge's verbal assault of Sellman about his disability and 100% VA Disability Rating, which Mueller was present for (App. at 123-124, 132), Mueller's change in behavior towards Sellman post-incident is a clear indication of animus (App. at 132). Before the altercation, Mueller and Sellman had a friendly rapport, but afterwards, Mueller became notably short and less communicative with Sellman (App. at 131-132). This change in demeanor is not merely a matter of personal relationship dynamics but aligns with the timing of the known altercation, suggesting a retaliatory motive linked to Sellman's disability status and the altercation.

The January 31st performance review reeks of pretext.  The legitimacy of Mueller's January 31st performance review of Sellman, which negatively impacted Sellman's employment status, is heavily disputed. Sellman's signature appears on the January 9th review, but not the January 31st performance review. While Mueller claims to have prepared and discussed this review with Sellman, who allegedly reacted negatively, Sellman denies having seen or discussed this review while employed at ATC. (App. 29, 114-15). This discrepancy points towards a possibility that the negative performance review was falsely created to justify the non-renewal of Sellman's contract. In light of Mueller's change in attitude towards Sellman after

Sofge's verbal attack, this evidence is not a reliable basis for Sofge's recommendation that Sellman's contract not be renewed. The evidence of Mueller's altered behavior post the altercation and the contested legitimacy of the January 31st review, which was critical to Sellman's employment at ATC, raise questions about the unbiased nature of the decision-making process. The timing and nature of these events suggest that Mueller's retaliatory animus could have been a significant factor in the decision to take adverse employment actions against Sellman.

Additionally, the use of subjective criteria in evaluating performance can also establish pretext. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1218 (10th Cir. 2002). The evidence suggests that ATC's evaluation of Sellman was subjective and not based on objective criteria, further supporting the argument of pretext.

"[T]he combination of suspicious timing with other significant evidence of pretext, can be sufficient to survive summary judgment." *Evans v. City of Houston*, 246 F.3d 344, 356 (5th Cir. 2001), citing *Shackelford v. Deloite & Touche*, 190 F.3d 398, 408 (5th Cir. 1999). In this case, within 11 weeks of being counseled for his comments to Sellman, Sofge recommended the non-renewal of Sellman's contract, which when viewed with the other evidence demonstrates pretext.

Moreover, such analysis inevitably requires weighing the evidence in light of the foregoing factors, and it is well-settled that weighing evidence is a function reserved for the jury. *Mastsuhia Elec. Indus., Inc. v. Zenith Radio Corp.*, 475 U.S.

574, 587 (1986) ("On summary judgment the inferences to be drawn from the underling facts contained in such materials must be viewed in the light most favorable to the party opposing the motion.") (quoting *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Further, any inferences about the meaning of the statements must be drawn in favor of the plaintiff at summary judgment, and even if drawing inferences in the plaintiff's favor results in finding the statements to be ambiguous, summary judgment should still be denied so that the jury may resolve the ambiguity. *See Shager v. Upjohn, Co.*, 913 F.2d 398, 402 (7th Cir. 1990) ("[T]he task of disambiguating ambiguous utterances is for trial, not for summary judgment. On a motion for summary judgment the ambiguities in a witness's testimony must be resolved against the moving party.").

Indeed, the District Court's dismissal of these key pieces of evidence deviates from the standard set by *Patterson v. McLean Credit Union*, 491 U.S. 164, 187–88 (1989), and *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1168 (10th Cir. 2007), which hold that a plaintiff may use any means to demonstrate that an employer's stated reasons are pretextual. The District Court's failure to adequately consider the impact of Sofge's animus, particularly in light of the conflicting testimonies and the deviation from normal procedures, represents a misapplication of the legal standards governing employment discrimination cases.

In conclusion, considering the evidence presented in the record, there is a genuine issue of material fact regarding the discriminatory and retaliatory animus of Mueller and its influence on the adverse employment actions against Sellman. Therefore, the District Court's decision to grant summary judgment fails to account for these disputed material facts, necessitating a reversal of its decision in accordance with the principles established in *E.E.O.C. v. BCI Coca-Cola Bottling Co. and Simmons v. Sykes Enters., Inc.*

## II. The District Court Erred in its Narrow Interpretation of USERRA by Excluding Discrimination Based on Service-Related Disabilities.

In its dismissal of the USERRA claim, the District Court adopted a constricted interpretation of the Uniformed Services Employment and Reemployment Rights Act, failing to recognize the act's comprehensive protective scope against employment discrimination for service members. By focusing solely on discrimination directly linked to military service and excluding adverse actions related to service-incurred disabilities, the District Court overlooked the integral connection between a service member's duty and the resulting disabilities. This narrow interpretation significantly undermines USERRA's overarching objective to safeguard the civilian employment rights of those who have sacrificed for their country. The following analysis aims to illustrate how this constrained view of USERRA disregards the realities of service-related disabilities and their impact on

employment, necessitating a broader judicial understanding in line with the Act's intent to provide extensive protections for our uniformed service members.

### A.    Legal Framework

Protections under USERRA extend to "[a] person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service . . . on the basis of that membership, application for membership, performance of service, application for service, or obligation". 38 U.S.C. § 4311(a).

### B.    Legal Argument

USERRA was enacted to protect the rights of veterans. *Hill v. Michelin N. Am., Inc.*, 252 F.3d 307, 312–13 (4th Cir.2001); *Quick v. Frontier Airlines, Inc.*, 544 F. Supp. 2d 1197, 1206–07 (D. Colo. 2008) citing 38 U.S.C. § 4311(a), (b). Because of USERRA's compelling purpose, "it must be broadly construed in favor of its military beneficiaries." *Hill*, 252 F.3d at 313; accord *Duarte v. Agilent Techs., Inc.*, 366 F.Supp.2d 1039, 1045 (D.Colo.2005).  *Quick v. Frontier Airlines, Inc.*, 544 F. Supp. 2d 1197, 1206–07 (D. Colo. 2008) citing 38 U.S.C. § 4311(a), (b). Because of USERRA's compelling purpose, "it must be broadly construed in favor of its military beneficiaries." *Hill*, 252 F.3d at 313; accord *Duarte v. Agilent Techs., Inc.*, 366 F.Supp.2d 1039, 1045 (D.Colo.2005).

USERRA, as outlined in 38 U.S.C. § 4301 et seq., is designed to protect service members from employment discrimination on the basis of their military service. The District Court's reliance on *Ferrell v. Ezpawn Oklahoma, Inc.*, to dismiss the USERRA claim, constrains the scope of USERRA's protection in a manner inconsistent with the Act's intent and the broader judicial interpretations of its provisions.

Veterans have the right to healthcare through the VA. The evidence reveals Sofge had a problem with the VA disability benefit system and Sellman's exercise of his rights to those benefits. Indeed, the discrimination against Mr. Sellman was intrinsically tied to his military service, given that his disability and the resulting VA benefits were direct outcomes of his service. To interpret USERRA as excluding protection against discrimination stemming from utilization of VA benefits or service-connected disabilities would be to ignore the broader context in which such service and its consequences, including disabilities, are situated.

Furthermore, this interpretation aligns with the purpose of USERRA, which is to broadly protect service members and veterans from any form of employment discrimination arising from their military obligation. A narrow interpretation, as applied in *Ferrell*, risks creating a gap in protection that leaves service members vulnerable to discrimination based on the very sacrifices they made while serving their country. Likewise, the other cases cited by the District Court, such as *Wolfgram*

*v. G4S Secure Sols. (USA), Inc.,* 2018 WL 5016337 (N.D. Ind. Oct. 15, 2018) which supports a narrower interpretation, do not adequately capture the full range of discriminatory practices that USERRA seeks to prevent. By excluding disabilities that originate from military service and utilization of VA benefits, the Court's interpretation creates a significant gap in the protections USERRA intends to provide.

The aforementioned evidence of pretext regarding Sellman's disability and retaliation claim and sufficient to establish his exercising rights as a veteran wee a motivating factor in ATC's decision not to renew Sellman's contract.

Therefore, the District Court's application of *Ferrell* to dismiss the USERRA claim is an overly restrictive interpretation that does not align with the text, spirit or purpose of USERRA. This Court should apply a broader interpretation of USERRA that encompasses discrimination based on accessing of VA benefits and disabilities incurred as a direct result of military service, thereby offering comprehensive protection to service members in their civilian employment.

## CONCLUSION

Sellman served to protect the rights granted to Americans under the United States Constitution.  Sadly, Sellman has been wrongly deprived of one of those very rights, the right to trial by jury.

In conclusion, this appeal calls for a critical reassessment of the District Court's rulings under both the Americans with Disabilities Act (ADA) and the Uniformed Services Employment and Reemployment Rights Act (USERRA). It urges a broader and more inclusive interpretation of these pivotal anti-discrimination statutes in light of the ample and strong evidence presented, in line with their legislative intent and judicial precedent.

Specifically, the appeal seeks recognition of how workplace discrimination and retaliation is accomplished in the real world, encompassing not only direct biases but also those influences and leverage exerted through the 'cat's paw' principle.

Additionally, it advocates for an expanded understanding of USERRA to include protections against employment discrimination arising from service-related disabilities. This case, therefore, presents an opportunity to affirm the comprehensive safeguards envisioned by these laws, ensuring fair and equitable treatment for individuals with disabilities and those who have honorably served in the uniformed services.

In light of the foregoing arguments and considerations, it is respectfully requested that this Honorable Court reverse the judgment issued by the District Court in favor of Defendant-Appellee, Aviation Training Consulting LLC. Furthermore, it is urged that this matter be remanded for further proceedings, allowing for a jury to

hear Sellman's case and make a decision whether his rights were violated under the Americans with Disabilities Act and the Uniformed Services Employment and Reemployment Rights Act.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to 10th Cir. R. 28.2(C)(2), the Plaintiff-Appellant, Nicholas Sellman, respectfully requests oral argument in this appeal. This case presents complex legal issues central to the interpretation and application of the Americans with Disabilities Act (ADA), specifically relating to employment discrimination and the 'cat's paw' principle. The nuanced nature of these issues, particularly the interpretation of the 'cat's paw' principle as established in *Staub v. Proctor Hospital* and its application to the facts at hand, warrants oral discussion for a thorough and comprehensive understanding. Furthermore, the appeal involves significant considerations of how a VA-recognized disability status intersects with employment decisions under the ADA. The oral argument will provide an opportunity for direct engagement with the Court on these critical issues, ensuring a clearer understanding and facilitating a more informed judicial determination, greatly assisting the Court in resolving the pivotal questions presented in this appeal.

Respectfully submitted,


/s/ JASON SMITH
JASON SMITH
State Bar No.   00784999

LAW OFFICES OF JASON SMITH
612 Eighth Avenue
Fort Worth, Texas 76104
Telephone: (817) 334-0880
Telecopier: (817) 334-0898

E-mail: jasons@letsgotocourt.com
ATTORNEY FOR APPELLANT
NICHOLAS SELLMAN

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,530 words, excluding the parts exempted from brief requirements under Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2023 Version 16.80 in 14-point Times New Roman typeface.

Dated: December 14, 2023.

/s/ JASON SMITH
JASON SMITH
State Bar No.   00784999

LAW OFFICES OF JASON SMITH
612 Eighth Avenue
Fort Worth, Texas 76104
Telephone: (817) 334-0880
Telecopier: (817) 334-0898
E-mail: jasons@letsgotocourt.com
ATTORNEY FOR APPELLANT
NICHOLAS SELLMAN

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2023, I electronically filed the foregoing document with the clerk for the Court for the Tenth Circuit Court of Appeals, using the electronic case filing system of the Court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means and pursuant to the Appellate Rules of Civil Procedure:

Philip R. Bruce
McAfee & Taft
A Professional Corporation
Eighth Floor, Two Leadership Square
211 N. Robinson Avenue
Oklahoma City, Oklahoma 73102
Email: philip.bruce@mcafeetaft.com
ATTORNEY FOR DEFENDANT-APPELLEE

/s/ JASON SMITH
JASON SMITH
State Bar No.  00784999

LAW OFFICES OF JASON SMITH
612 Eighth Avenue
Fort Worth, Texas 76104
Telephone: (817) 334-0880
Telecopier: (817) 334-0898
E-mail: jasons@letsgotocourt.com
ATTORNEY FOR APPELLANT
NICHOLAS SELLMAN

# APPENDIX

1. Order granting Defendant Aviation Training Consulting, LLC's Motion for Summary Judgment and Brief in Support (September 14, 2023) (ECF Doc. 100);

2. Judgment (entered September 14, 2023) (ECF Doc. 101).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

|                          |   |                        |
|--------------------------|---|------------------------|
| NICHOLAS SELLMAN,        | ) |                        |
|                          | ) |                        |
|    Plaintiff, | ) |                    |
|                          | ) |                        |
| v.                       | ) | Case No. CIV-22-365-D  |
|                          | ) |                        |
| AVIATION TRAINING        | ) |                        |
| CONSULTING, LLC,         | ) |                        |
|                          | ) |                        |
|    Defendant. | ) |                    |

## <u>ORDER</u>

Before the Court is Defendant Aviation Training Consulting, LLC's Motion for Summary Judgment and Brief in Support [Doc. No. 66]. Plaintiff Nicholas Sellman filed a Response [Doc. No. 86], and Defendant filed a Reply [Doc. No. 92]. Thereafter, the Court allowed Plaintiff to file a Supplemental Response [Doc. No. 96] and Defendant to file a Sur-Reply [Doc. No. 99]. The matter is fully briefed and at issue.

## BACKGROUND

Plaintiff is a Marine veteran with a disability rating assigned by the United States Department of Veterans Affairs (VA). Defendant is a disabled American veteran-owned company providing aircrew training services to the Kuwaiti Air Force on behalf of the United States Department of Defense. From April 2017 to April 2018, Plaintiff worked for Defendant in Kuwait as a Loadmaster Instructor for the KC-130 military aircraft. Plaintiff's one-year contract was not renewed by Defendant. Plaintiff asserts three causes of action against Defendant: 1) disability discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq*. (ADA), as amended by the ADA Amendments

1

Act of 2008; 2) retaliation prohibited by the ADA; and 3) employment discrimination on the basis of Plaintiff's military service, in violation of the Uniform Services Employment and Reemployment Rights Act, 38 U.S.C. §§ 4301, *et seq*. (USERRA).

Defendant seeks summary judgment in its favor with respect to each of Plaintiff's causes of action. For Plaintiff's ADA claims, Defendant argues that Plaintiff is not "disabled" as defined by the ADA; that Defendant decided not to renew Plaintiff's one-year contract due to his marginal job performance; and that Plaintiff cannot show pretext. With respect to Plaintiff's USERRA claim, Defendant contends that Plaintiff's allegations of disability related discrimination cannot support a USERRA claim, which statute prohibits employment discrimination based on a person's military status.

## UNDISPUTED FACTS[1]

Defendant employed Plaintiff as a Loadmaster Instructor under a one-year contract. Defendant was not obligated to renew or extend Plaintiff's contract past the one year, and Plaintiff knew there was no guarantee of an extension. Plaintiff worked in

---

[1] This statement includes material facts that are properly supported by the asserting party and not opposed in the manner required by FED. R. CIV. P. 56(c). Plaintiff did not dispute any of Defendant's Undisputed Material Facts (UMF). Pl.'s Resp. at 3; Pl.'s Supp. Resp. at 1-3. Accordingly, the Court accepts as true all material facts asserted and properly supported by Defendant's Motion for Summary Judgment. LCvR56.1(e) ("All material facts set forth in the statement of material facts of the movant may be deemed admitted for the purpose of summary judgment unless specifically controverted by the nonmovant using the procedures set forth in this rule."). The Court may consider evidence in the record not specifically cited by the parties, *see* FED. R. CIV. P. 56(c)(3), but the Court is not required to comb through Plaintiff's evidence to determine the bases for a claim that a factual dispute exists. *See Espinoza v. Coca-Cola Enterprises, Inc.*, 167 F. App'x 743, 746 (10th Cir. 2006) ("[W]here the nonmovant failed to support his case with adequate specificity, we will not fault the court for not searching the record on its own to make his case for him (nor will we take on that role of advocacy).").

Defendant's Kuwait offices from April 3, 2017, until his contract ended on April 9, 2018.

As a Loadmaster Instructor, Plaintiff was required to maintain an FAA flight certificate. Under the FAA Regulations, it is unlawful for a person to exercise airman privileges without an FAA flight certificate. Plaintiff understood that he was required to maintain an FAA flight certificate for his position.

When Plaintiff applied for the Loadmaster Instructor position, he disclosed that he had a 90% VA disability rating. On November 14, 2017, during Plaintiff's employment with Defendant, the VA notified Plaintiff that his disability rating for PTSD and an unspecified sleep disorder had been increased from 30% to 70%, which gave Plaintiff a combined VA disability rating of 100%.

After Plaintiff received his 100% VA disability rating, he told co-worker Jean Colley and Director of Operations Richard Sofge. It is undisputed that Sofge then made inappropriate comments to Plaintiff regarding his VA disability rating. Although there is some dispute as to Sofge's precise comments, Sofge referred to individuals who "game the system" and how the VA disability system is broken. Plaintiff alleges that Sofge sarcastically called him a "cripple" and a "criminal" for collecting disability benefits, implying that Plaintiff was not actually disabled.

On November 17, 2017, Plaintiff made a complaint to James Williams, Defendant's Director of Human Resources, regarding Sofge's comments. Williams investigated the incident, and Vice President of International Operations Dennis Stephens counseled Sofge that his comments were inappropriate and would not be tolerated. It is undisputed that Sofge did not make any other insensitive or inappropriate comments to

Plaintiff after his counseling.

Plaintiff was notified on November 29, 2017, that the FAA needed additional information before renewing Plaintiff's flight certificate. Without an FAA flight certificate, Plaintiff would not be eligible to fly. Plaintiff responded to the November 29 letter on January 5, 2018. In January and February of 2018, there was confusion within Defendant's offices as to whether Plaintiff was eligible to fly due to the uncertainty regarding Plaintiff's FAA flight certificate. During this time, both Williams and Sofge checked in with Plaintiff on the status of his flight certificate. Ultimately, it was Plaintiff's responsibility to maintain his flight certificate and flight eligibility.

In January of 2018, Graham Mueller, Defendant's Chief Pilot in Kuwait, conducted a performance review of Plaintiff. Mueller rated Plaintiff as "marginal" in dependability, communication skills, and initiative. Mueller provided additional comments that Plaintiff "[h]as difficulty completing assigned tasks without direct supervision"; has "difficulty communicating with others in the office" and "will not provide necessary information unless asked directly multiple times"; "[c]onstantly requires direction in order to accomplish assigned tasks"; and "[w]ill not perform any tasks outside directed duties nor provide ideas on improving projects or workspace processes."

On February 5, 2018, Mueller e-mailed Sofge Plaintiff's performance review with the additional comment that, from Mueller's relative value rankings, Plaintiff was "ranked 3/3 for loadmaster instructors and his overall average [fell] at the bottom of the aircrew

stack." On February 5, 2018, Sofge forwarded Mueller's review to Williams and Stephens. On February 27, Sofge gave his recommendation that Plaintiff's contract not be renewed.

Michael Young, Defendant's Vice President of Operations, had previously held Sofge's position in Kuwait for the first several months of Plaintiff's employment. Before Young left Kuwait, he observed that Plaintiff's performance was below other Loadmaster Instructors and told Plaintiff he needed to "tighten it up" with his job performance.

As of March 1, 2018, Plaintiff's FAA flight certificate had expired and Plaintiff was no longer eligible to fly. For Williams, Stephens, Young, Sofge, and Defendant's founder and CEO, Robert Cox, Plaintiff was the first flight crew employee to allow an FAA flight certificate to expire.

Neither Sofge nor Williams had the power to hire, renew contracts, or terminate employees. Young and Stephens made the decision not to renew Plaintiff's contract because of his subpar performance, as communicated by Mueller's performance review and Young's opinion of Plaintiff when he was Plaintiff's supervisor in Kuwait. Cox gave final approval to not renew Plaintiff's contract based on Mueller's and Young's perceptions of Plaintiff's subpar performance. Cox found it further indicative of Plaintiff's performance issues that he did not maintain an FAA flight certificate or flight eligibility, which was required for Plaintiff's position. When Cox decided to not renew Plaintiff's contract, he did not know about Plaintiff's complaint to Williams regarding Sofge's inappropriate comments or specific reasons why Plaintiff's FAA flight certificate had expired.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248. All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.* at 255.

A movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998); *see* FED. R. CIV. P. 56(c)(1)(A). The inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## DISCUSSION

### I.   USERRA

Plaintiff's USERRA claim fails as a matter of law. "The USERRA prohibits employers from terminating service-members based on their membership in or obligations to the armed services." *Starr v. QuikTrip Corp.*, 655 F. App'x 642, 645 (10th Cir. 2016)

(citing 38 U.S.C. § 4311(a)). An employee who brings a claim under USERRA "bear[s] the initial burden of showing by a preponderance of the evidence that [his or her] military service was a substantial or motivating factor in the adverse employment action." *Lewis v. Rite of Passage, Inc.*, 217 F. App'x 785, 786 (10th Cir. 2007) (internal quotation marks and citation omitted). Military status "is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Lewis*, 217 F. App'x at 786 (internal quotation marks and citation omitted).

Plaintiff has failed to establish a genuine issue of material fact as to whether his prior military service was a motivating factor in Defendant's decision to not renew Plaintiff's one-year contract. Plaintiff's USERRA claim is premised not on his prior military service, but on his disability status and, more particularly, his receipt of a combined 100% VA disability rating. In support of his USERRA claim, Plaintiff alleges that Sofge berated him after learning that he had received a 100% VA disability rating.[2] As USERRA's protections do not extend to disability status, Plaintiff has failed to establish a claim under USERRA. *See Ferrell v. Ezpawn Oklahoma, Inc.*, No. CIV-18-607-SLP, 2019 WL 3207797, at *3 (W.D. Okla. July 16, 2019) (finding allegation of discrimination "due to the disability [the plaintiff] suffered during his military service" outside the scope of USERRA); *see also Wolfgram v. G4S Secure Solutions (USA), Inc.*, 2018 WL 5016337, at *3 (N.D. Ind. Oct. 15, 2018) ("[T]he fact that [a plaintiff's] alleged disability began during his military service does not in itself implicate USERRA absent additional facts.").

---

[2] Sofge is also a disabled American veteran. *See* UMF No. 14.

Plaintiff has similarly failed to provide evidence relating to the factors upon which a discriminatory motivation against military service may be reasonably inferred, which include:

> [P]roximity in time between the employee's military activity and the adverse employment action, inconsistencies between the proffered reason and other actions of the employer, an employer's expressed hostility toward members protected by the statute together with knowledge of the employee's military activity, and disparate treatment of certain employees compared to other employees with similar work records or offenses.

*Hance v. Norfolk S. Ry. Co.*, 571 F.3d 511, 518 (6th Cir. 2009) (citation omitted). Plaintiff does not allege that any comments were made to him regarding his military service or status. It is undisputed that Plaintiff's veteran status was not only known to Defendant before hiring Plaintiff but was a preferred qualification for the Loadmaster Instructor position. *See* UMF No. 3; Def.'s Mot., Ex. 39. Plaintiff has not alleged disparate treatment compared to any non-military employees. Accordingly, Defendant is entitled to summary judgment on Plaintiff's USERRA claim.

## II.    ADA Discrimination and Retaliation

The ADA prohibits discrimination "in regard to … the hiring, advancement, or discharge of employees, … and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Further, "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Where a plaintiff relies on indirect evidence to establish ADA discrimination or retaliation, courts utilize the familiar burden-shifting framework defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3] Under this framework, a plaintiff is first required to establish a prima facie case of discrimination or retaliation, at which point "the burden shifts to the defendant to offer a legitimate nondiscriminatory reason for its employment decision." *MacKenzie v. City and Cnty. of Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005) (abrogated on other grounds by *Lincoln v. BNSF Railway Co.*, 900 F.3d 1166 (10th Cir. 2018)). Thereafter, the burden shifts back to a plaintiff to "proffer evidence demonstrating the employer's reason is pretextual." *MacKenzie*, 414 F.3d at 1274.

A.     **Prima Facie Case**

To state a prima facie case of ADA discrimination, Plaintiff is required to show 1) that he is a disabled person as defined by the ADA; 2) that he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and 3) that his employer discriminated against him because of his disability. *Id.*

ADA retaliation claims require a plaintiff to show 1) that he engaged in a protected activity; 2) that he was "subjected to adverse employment action subsequent to or contemporaneous with the protected activity"; and 3) a "causal connection between the protected activity and the adverse employment action." *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999) (citing *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1324 (10th Cir. 1997)).

---

[3] Plaintiff acknowledges that the *McDonnell Douglas* framework is applicable to his ADA claims. *See* Pl.'s Resp. at 10.

The Court assumes, without deciding, that Plaintiff has satisfied his prime facie burden for his ADA discrimination and retaliation claims. It does so because even if Plaintiff established a prima facie case under the ADA, he has failed to identify evidence that Defendant's reason for not renewing Plaintiff's one-year contract was a pretext for discrimination or retaliation. *See Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1317 n.10 (10th Cir. 2017) ("[The Tenth Circuit has] previously affirmed a grant of summary judgment on the basis of failure to show pretext after assuming without deciding that an employee has stated a prima facie case.").

### B.      Legitimate, Non-Discriminatory Reason for Employment Decision

Because the Court assumes that Plaintiff has satisfied his prima facie burden for both ADA claims, the burden shifts to Defendant to proffer a legitimate, non-discriminatory reason for its employment decision. *See Mackenzie*, 414 F.3d at 1274.

Defendant proffers Plaintiff's marginal performance for its decision not to renew Plaintiff's one-year contract. When Mueller reviewed Plaintiff's performance, he rated Plaintiff as "marginal" in dependability, communication skills, and initiative. Mueller provided additional comments that Plaintiff "[h]as difficulty completing assigned tasks without direct supervision"; "will not provide necessary information unless asked directly multiple times"; "[c]onstantly requires direction in order to accomplish assigned tasks"; and "[w]ill not perform any tasks outside directed duties nor provide ideas on improving projects or workspace processes." Def.'s Mot., Ex. 20, Plaintiff's Performance Review.

On February 6, 2018, Sofge forwarded Mueller's review to Williams and Stephens. Def.'s Mot., Ex. 21. Relying on Mueller's performance review and Young's opinion that

Mueller's review lined up with his own perception of Plaintiff's performance, Young and Stephens decided to not renew Plaintiff's contract due to his subpar performance. Cox gave final approval of the non-renewal and found that Plaintiff's failure to maintain an FAA flight certificate was another indication of Plaintiff's performance issues. *See* UMF Nos. 52-53.

The Court finds Defendant's proffered reason to be legitimate and nondiscriminatory. Thus, the burden shifts back to Plaintiff to show that Defendant's reason is pretextual. *See MacKenzie*, 414 F.3d at 1274.

### C.    Pretext

"A plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Anderson*, 181 F.3d at 1179 (citation omitted). In determining pretext, it is not for the Court to decide whether Defendant's reasons for its decision were "wise, fair, or even correct," so long as they were truly the reasons for the decision. *Hardy v. S.F. Phosphates Ltd. Co.*, 185 F.3d 1076, 1083 (10th Cir. 1999) (quoting *Giannopoulos v. Brach & Brock Confections, Inc.*, 109 F.3d 406, 411 (7th Cir. 1997)). The Court's role is "to prevent unlawful hiring practices, not to act as a super personnel department that second guesses employers' business judgments." *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1233 (10th Cir. 2000) (quotation and citation omitted). "[A] challenge of pretext requires [courts] to look at the facts as they appear to the person making the decision to

terminate [a] plaintiff." *Kendrick*, 220 F.3d at 1231. "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment." *Anderson*, 181 F.3d at 1179 (citing *Morgan*, 108 F.3d at 1323).

Upon consideration of the record presented, and viewing all reasonable inferences in favor of Plaintiff, the Court finds that Plaintiff has failed to present sufficient facts and evidence from which a reasonable finding of pretext could be made.

### i.      Subordinate Bias

Plaintiff argues that Sofge "played a central role in [Defendant's] decision not to renew [Plaintiff's] contract"; that he recommended Plaintiff's contract not be renewed 2.5 months after he was disciplined for his inappropriate comments related to Plaintiff's VA disability rating; and that Sofge "falsely told [Plaintiff] that the decision not to renew his contract came from headquarters and he had nothing to do with it." Pl.'s Supp. Resp. at 14-15. As Plaintiff failed to dispute that Sofge did not make the decision regarding non-renewal of Plaintiff's contract, *see* UMF Nos. 48, 52-53, the Court construes these statements as an attempt to show pretext via a subordinate bias theory (also known as "cat's-paw" or "rubber-stamp" theory).

Under a subordinate bias theory, "an employer who acts without discriminatory intent can be liable for a subordinate's discriminatory animus if the employer uncritically relies on the biased subordinate's reports and recommendations in deciding to take adverse employment action." *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 514 (10th Cir. 2015) (citing *E.E.O.C. v. BCI Coca-Cola Bottling Co.*, 450 F.3d 476, 484-85 (10th Cir. 2006)).

Even assuming that Sofge acted with discriminatory or retaliatory animus, the Court concludes that a reasonable jury could not infer from Plaintiff's evidence that Defendant's decisionmakers uncritically relied on Sofge's recommendation. It is undisputed that Stephens and Young made the decision to not renew Plaintiff's contract, with final approval from Cox. *See* UMF No. 49. Their decision was based on Mueller's performance review which ranked Plaintiff as "marginal" in certain areas and "at the bottom of the aircrew stack." UMF Nos. 18-19, 52. Cox's determination was bolstered by Young's opinion that Plaintiff's marginal review was consistent with what Young had observed when he was Plaintiff's supervisor. UMF No. 52. Cox also considered Plaintiff's failure to maintain his FAA flight certificate as indicative of Plaintiff's performance issues with communication, initiative, and dependability. UMF No. 53. Plaintiff's failure to dispute any of these material facts is fatal to his theory that Defendant's decision-makers merely "rubber-stamped" Sofge's recommendation.

To the extent that Plaintiff argues a subordinate bias theory for Mueller's role in reviewing Plaintiff's performance, such an argument fails. The Court previously granted Plaintiff leave to take Mueller's deposition to fully respond to Defendant's Motion for Summary Judgment [Doc. No. 82]. At his deposition, Mueller testified that he was not made aware of Plaintiff's HR complaint until after he stopped working for Defendant. Def.'s Sur-Reply, Ex. 1, Mueller Depo. at 37:20-39:6. Mueller also testified that he was not aware that Plaintiff suffered from PTSD. *Id.* at 40:11-12. Plaintiff has not provided any evidence to support his conclusory statements that Mueller knew about Plaintiff's HR complaint or PTSD when he conducted Plaintiff's performance review. Plaintiff's

allegation that Mueller "no longer joked around with [Plaintiff]" after Plaintiff's HR complaint is insufficient for a reasonable jury to infer that Mueller acted with discriminatory or retaliatory animus in reviewing Plaintiff.

### ii.    Mere Knowledge of Defendant's HR Complaint and/or Disability

Plaintiff alleges that Stephens' participation in Defendant's decision to not renew Plaintiff's contract, with knowledge of Plaintiff's HR complaint and disability status, establishes pretext. The Court disagrees. Without more, the fact that Stephens knew of Plaintiff's HR complaint or disability status when he participated in the decision regarding Plaintiff's non-renewal does not create a reasonable inference of pretext. *See Anderson v. AOL, LLC*, 363 F. App'x 581, 586-87 (10th Cir. 2010); *see also Christopher v. Adam's Mark Hotels*, 137 F.3d 1069, 1073 (8th Cir. 1998) ("Mere knowledge of a disability cannot be sufficient to show pretext; otherwise, summary judgment for an employer would be appropriate only in cases where the employer is completely unaware of the plaintiff's disability.").[4]

### iii.    Temporal Proximity

Plaintiff refers to "suspicious timing" as evidence of pretext. It is well-settled that temporal proximity, standing alone, is insufficient to establish pretext. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1213 (10th Cir. 2007) ("Although we may consider evidence

---

[4] To the extent that Plaintiff intended to make a similar argument regarding Williams' involvement, it is undisputed that Williams did not make the decision to not renew Plaintiff's contract, nor did Defendant's decisionmakers rely on a recommendation from Williams. Even if they did, Plaintiff has failed to provide any evidence that Defendant's legitimate reasoning is unworthy of credence merely because Williams had knowledge of Plaintiff's HR complaint and/or disability status.

of temporal proximity – typically used to establish a prima facie case – in analyzing pretext, … temporal proximity alone is insufficient to raise a genuine issue of material fact concerning pretext.") (internal citation omitted). Although suspicious timing may be considered with other evidence of pretext, the Court finds that the more than three months between Plaintiff's mid-November 2017 HR complaint and Defendant's March 2018 decision to not renew Plaintiff's contract is not sufficient to overcome Defendant's proffered reason for its decision.[5] *See Anderson*, 181 F.3d at 1180.

### iv.    Company Policy

As other evidence of pretext, Plaintiff alleges inconsistencies in the performance review process conducted by Mueller. Specifically, Plaintiff argues 1) Defendant's review policy required a performance review to be conducted after an employee's 39th week of work and Plaintiff's occurred in his 36th week; and 2) Mueller did not have Plaintiff or Sofge (as Senior Rater) sign Plaintiff's performance review. "A plaintiff may … show pretext by demonstrating the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the plaintiff." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017) (internal quotations and citation omitted). "[T]he standard for establishing pretext requires evidence of not just any procedural shortfall, but of a 'disturbing procedural irregularity,' … often exemplified by an employer's 'falsifying or manipulating

---

[5] The Court notes that the Fifth Circuit case relied upon by Plaintiff involved a five-day period between the plaintiff's protected activity and her supervisor recommending Plaintiff's demotion. *See Evans v. City of Houston*, 246 F.3d 344, 347 (5th Cir. 2001).

of relevant criteria.'" *Cooper v. Wal-Mart Stores, Inc.*, 296 F. App'x 686, 696 (10th Cir. 2008) (internal citation omitted).

Plaintiff has not adduced evidence of a disturbing procedural irregularity required for a showing of pretext. Plaintiff alleges Defendant's failure to review his performance after his 39th week establishes pretext. However, it is undisputed that Plaintiff's performance review occurred, at the earliest, on January 9, 2018, which followed his 39th week of work. *See* UMF Nos. 2, 16; Pl.'s Supp. Resp., Fact No. 14.

Plaintiff further argues that Mueller failed to have Plaintiff or Sofge sign Plaintiff's performance review, which allegedly went against Defendant's policy. Viewing this inference in favor of Plaintiff, and assuming Defendant's policy was to have employees and a supervisor sign all performance reviews, Mueller's failure to follow this policy is insufficient to establish pretext. *See Doke v. PPG Industries, Inc.*, 118 F. App'x 366, 370 (10th Cir. 2004) (finding failure to follow company policy of providing written warnings insufficient to establish pretext); *see also Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that … the substantive reasons given by the employer for its employment decision were pretextual.") (citation omitted); *Velasquez v. Frontier Medical Inc.*, 375 F.Supp.2d 1253, 1287 ("Resolving all doubts in favor of [the plaintiff], and concluding that the mandatory policy was to have the employee sign all reprimands … there is still insufficient evidence to create a genuine issue of material fact that [the defendant's] reason is pretext."). No reasonable jury could conclude that Defendant's understanding of Plaintiff as a marginal employee is unworthy of belief merely

16

because Mueller did not get his performance review of Plaintiff signed. Thus, the Court finds that Mueller's failure to obtain signatures for Plaintiff's performance review is not a procedural irregularity sufficient to raise an inference of pretext.

### v.     Plaintiff's Self-Evaluation and Colley's Check-Ride

Plaintiff further alleges that his performance was not sub-par and that a fellow Loadmaster, Jean Colley, observed on a routine check-ride that Plaintiff "was more than capable of doing his job." Pl.'s Resp. at 14. First, a co-worker's perception of a plaintiff's performance is insufficient to show pretext. *See Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 988 (10th Cir. 1996) ("It is the manager's perception of the employee's performance that is relevant…."). And, even if Colley had been Plaintiff's supervisor, Colley's opinion as to Plaintiff's flight capabilities are not inconsistent with Mueller's performance review, which ranked Plaintiff as "satisfactory" in *technical competence*, but "marginal" in "initiative," "communication skills," and "dependability." Def.'s Mot., Ex. 20, Plaintiff's Performance Review. Plaintiff's self-assessment of his performance similarly fails to show pretext. *See Henson v. Amerigas Propane, Inc.*, 681 F. App'x 697, 700 (10th Cir. 2017) ("[Plaintiff's] self-assessment of his performance is not enough to show pretext.").

### vi.     Disparate Treatment

Plaintiff similarly fails to adduce evidence of disparate treatment between himself and similarly situated members of the protected class. In his Supplemental Response, Plaintiff states that Colley had his contract renewed by Defendant and served for seven years. Pl.'s Resp., Fact No. 16. Plaintiff further alleges that "other loadmasters signed their evaluations[,] indicating they had had an opportunity to review and dispute any items."

Pl.'s Resp., Fact No. 17. Beyond these statements, Plaintiff does not attempt to show how Colley or any of the other Loadmasters were similarly situated to Plaintiff for purposes of showing disparate treatment. For this reason, Plaintiff's disparate treatment argument fails.

### vii.    References to Contract Renewal

Plaintiff alleges that Defendant told Plaintiff he would get a new contract. *See* Pl.'s Resp., Fact No. 18. For support, Plaintiff cites only to his own deposition testimony of a conversation between himself and Williams. Plaintiff testified that Williams received Plaintiff's FAA flight certificate renewal and said that "if there [weren't] any issues, [Williams] would give [Plaintiff] a contract as soon as possible." Pl.'s Resp., Ex. 13, Pl.'s Depo. at 247:2-5.

Viewing the inference in favor of Plaintiff, Plaintiff still fails to show pretext. It is undisputed that Williams did not participate in the decision to not renew Plaintiff's contract, nor did Williams have the authority to make those types of decisions for Defendant. Thus, even assuming that Williams presumed Defendant would renew Plaintiff's contract if his FAA flight certificate were renewed, Williams' perception of Plaintiff's employment situation does not raise an inference that Defendant's decisionmakers' legitimate reasons for not renewing Plaintiff's contract were pretext for discrimination or retaliation.

### D.    ADA Conclusion

Because Plaintiff has failed to provide evidence supporting a reasonable inference that Defendant's legitimate reason for not renewing Plaintiff's contract was pretext for discrimination or retaliation, Defendant is entitled to summary judgment on Plaintiff's ADA claims.

### III.    Mitigation

Based on the foregoing conclusions, the Court declines to address the issue of mitigation.

**CONCLUSION**

**IT IS THEREFORE ORDERED** that Defendant Aviation Training Consulting, LLC's Motion for Summary Judgment and Brief in Support [Doc. No. 66] is **GRANTED**. A separate judgment will be entered.

**IT IS SO ORDERED** this 14th day of September, 2023.


_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NICHOLAS SELLMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-22-365-D |
| | ) | |
| AVIATION TRAINING | ) | |
| CONSULTING, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## JUDGMENT

Pursuant to the Order entered this date, the Court enters judgment in favor of

Defendant Aviation Training Consulting, LLC, against Plaintiff Nicholas Sellman.

**ENTERED** this 14th day of September, 2023.


_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge